```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FELIX NKANSAH,                        :
                                      :
              Petitioner,             :       **REPORT AND**
                                      :       **RECOMMENDATION**
                                      :
     -v.-                             :       15-CV-5100 (JSR)(JLC)
                                      :
UNITED STATES OF AMERICA,             :       08-CR-1234 (JSR)
                                      :
              Respondent.             :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Jed S. Rakoff, United States District Judge:**

Petitioner Felix Nkansah, proceeding *pro se*, brings this petition for relief

pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction following

a jury trial where he was convicted of conspiracy to defraud the United States in

violation of 18 U.S.C. § 286; filing false claims with the United States in violation of

18 U.S.C. §§ 287 and 2; bank fraud in violation of 18 U.S.C. §§ 1344 and 2;

aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), (c)(5), and 2; and

possession of means of identification of another person in violation of 18 U.S.C.

§§ 1028(a)(7), (b)(1), and 2.  In his petition, Nkansah raises 12 grounds for relief

including insufficient evidence to support his conviction, an unreasonable

restitution order, prosecutorial misconduct, and ineffective assistance of counsel.

However, all of Nkansah's claims are procedurally barred except for his ineffective

assistance of counsel claims, which lack merit.  Accordingly, I recommend that

Nkansah's petition be denied.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Investigation

In late 2007, the United States Secret Service and Internal Revenue Service ("IRS") investigated a series of identity thefts in New York City.  Trial Transcript ("Tr.") at 48, 285.  The investigation revealed that stolen social security numbers were being used to file fraudulent tax returns in order to collect refunds either through direct deposit or by depositing endorsed refund checks into one of several bank accounts.  *Id.* at 171-72.  Through its investigation, the Government established a connection between several fraudulently filed tax returns and Nkansah.  *Id.* at 48, 308-09.  Among other things, Nkansah's personal information including his home address, internet protocol ("IP") address, phone number, and bank account number appeared on several fraudulent tax returns.  *Id.* at 48, 309.  In addition, the investigation revealed that he was connected to several of the victims through mutual employment at the retail store, OMG.  *Id.* at 314, 323.  The evidence linking Nkansah to these fraudulent tax returns led the Government to obtain a warrant for his arrest.  *Id.* at 49-50.

### B.   Arrest and Indictment

On September 9, 2008, a search warrant was executed at Nkansah's home. *Id.* at 50.  During the search of his bedroom, federal agents found stolen identity information, including spreadsheets and charts containing names, social security numbers, and dates of birth.  *Id.* at 56, 70.  Agents also found correspondence between the IRS and possible victims containing tax refund information.  *Id.* at 63,

2

66-67. In addition, agents found money transfer receipts for funds Nkansah sent to his native country, Ghana. *Id.* at 64-65. Finally, agents seized his laptop, which contained a copy of an unfiled tax return for a victim, Noel Figueroa. *Id.* at 268.

During the search of his home, Nkansah arrived by car and was arrested. *Id.* at 82. Once in custody, agents proceeded to search Nkansah's car, which revealed additional documents containing identification information including "password type name[s]," social security numbers, and dates of birth. *Id.* at 82-84, 87. Agents also found a treasury check issued to Nkansah. *Id.* at 91.

On July 9, 2009, a grand jury returned a superseding indictment against Nkansah with five counts: (1) conspiracy to defraud the United States in violation of 18 U.S.C. § 286; (2) filing false claims with the United States in violation of 18 U.S.C. §§ 287 and 2; (3) bank fraud in violation of 18 U.S.C. §§ 1344 and 2; (4) aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), (c)(5), and 2; and (5) possession of means of identification of another person in violation of 18 U.S.C. §§ 1028(a)(7), (b)(1), and 2.[1] *See* Superseding Indictment dated July 9, 2009 (Criminal Docket ("Cr. Dkt.") No. 41); Memorandum of Law of the United States in Opposition to Petition ("Resp. Mem.") at 1-2.[2]

---

[1] The original indictment, filed on December 10, 2008, had included six counts. Cr. Dkt. No. 29.

[2] The Court refers to entries on the criminal docket as "Cr. Dkt No." and entries on the civil docket as "Dkt. No."

3

C.    **Trial**

Nkansah's trial was scheduled to start on July 6, 2009, but had to be rescheduled when it was discovered that he had fled the United States. Tr. at 282. Nkansah was subsequently arrested in Calgary on July 14, 2009 and on July 27, 2009, he pleaded not guilty to all charges. Tr. at 282; Cr. Dkt. No. 43. On January 15, 2010, the Government filed its Requests to Charge, in which it cured a defect in the superseding indictment by including the "interstate commerce" element that had been missing from Count five. Government's Requests to Charge at 45, 52 (Cr. Dkt. No. 55). The trial began on January 25, 2010. *Id.* at 1.

At trial, the Government presented 14 witnesses, physical evidence seized from Nkansah's home and car, Nkansah's bank records, and a chart identifying approximately 70 fraudulently filed tax returns submitted from an IP address linked to his residence. Resp. Mem. at 2-3. The Government's witnesses included Nkansah's co-defendant (David Dosoo), federal law enforcement agents (Michael Peck and Nick Silva), and three victims. Tr. at 27-32, 42-46, 50-93, 151-99, 283-335. On direct examination, Dosoo testified that Nkansah was a member of an identity theft ring, Nkansah provided him with approximately 75 identities, and Nkansah provided stolen identities to other conspirators as well. *Id.* at 155-61, 175, 182-83. Dosoo explained that he and Nkansah agreed to share equally any money received through filing fraudulent returns. *Id.* at 161. He estimated that the co-conspirators

4

filed "thousands" of fraudulent returns and received "thousands" of dollars in stolen refund checks.[3]  *Id.* at 185-86.

In addition, the Government produced witness testimony linking Nkansah's IP address with 50-70 fraudulent returns through taxact.com.  Tr. at 131.  It also presented records from three bank accounts demonstrating that he had received several stolen tax refunds.  First, the Government submitted evidence from his Commerce Bank account displaying two direct deposits of refund checks.  *Id.* at 118. Second, the Government presented evidence from his HSBC account illustrating that he had received several direct deposits from the United States Treasury in the form of tax refunds.  *Id.* at 398, 562.  Third, the Government linked a Bank of America account in the name of William K. Arthur ("Arthur account") to him.  The Arthur account records revealed that 14 United States Treasury tax refunds were deposited into the account and the account was associated with Nkansah's residence at 1156 Jackson Avenue in the Bronx.  Resp. Mem. at 5; Tr. at 310-11.  The Government established that funds from the Arthur account were later withdrawn at banks near Nkansah's home and school.  Tr. at 563.  Withdrawals were also made in Torrington, Connecticut, a place associated with Nkansah through envelopes found in his bedroom and car.  *Id.*  Moreover, the Arthur account was linked to two identity theft victims whose personal information was found in Nkansah's bedroom and another victim whose tax return was linked to Nkansah's IP address.  Tr. at 564; Resp. Mem. at 4.

---

[3] In fact, the Government's actual loss was $536,167.00.  *United States v. Nkansah*, 699 F.3d 743, 752 (2d Cir. 2012).

The defense presented no witnesses other than Nkansah, who testified that he was not involved with this scheme. Tr. at 368, 413. However, at the time of his arrest, he admitted that he lived at 1156 Jackson Avenue. *Id.* at 373, 418, 420-22. He also admitted that his IP address was linked to the fraudulent tax filings, but because it was not unique to his personal computer he contended that any one of the eight people living in his house could have filed the returns. *Id.* at 373. Similarly, he testified that the phone number linked to the fraudulent returns was a house number that any of his housemates could have inserted on the filings. *Id.*

In his testimony, Nkansah also admitted to opening accounts at Commerce Bank and HSBC, but denied taking any action to steal tax refunds. He claimed that four refunds were directly deposited in his Commerce Bank account after he gave the account number to his friend. *Id.* at 374-76. He attributed two of the deposits to his friend, but was unaware how the remaining two refunds had been deposited into the account. *Id.* Nkansah testified similarly when asked how refunds appeared in his HSBC account—that he gave his HSBC account number to his friend and when refunds were deposited, Nkansah delivered the funds to that friend. *Id.* at 396-97. As opposed to the other bank accounts, however, Nkansah claimed to have no account at Bank of America. He testified that he did not open an account in the name of William Arthur, but acknowledged that Arthur was his friend. *Id.* at 390-95. However, Nkansah did admit to making deposits into the account as a favor to Arthur. *Id.* at 390.

The jury began deliberating on January 28, 2010 at 2:43 p.m. and approximately two hours later, the Government realized that Nkansah's proffer agreement, which had not been entered into evidence, had been left in the jury room. *Id.* at 620, 627. The Court reviewed a copy of Nkansah's proffer agreement provided by the Government and determined it was "immaterial." *Id.* at 628. Because the jury had finished deliberating for the day, the Court instructed the deputy clerk to enter the jury room and retrieve the proffer agreement. *Id.* at 628-29. The deputy clerk found the proffer agreement still in the Redweld inside its original folder, which led the Court to conclude it was highly unlikely the jury had seen it. *Id.* at 631-32.

After the proffer agreement was retrieved, the Government realized that other extrinsic material had also been left in the jury room, and it was removed as well. *Id.* at 636. Of the six exhibits not entered into evidence, the record reflected that five were still in the Redweld inside manila folders. *Id.* at 637-38. Accordingly, the Court determined that it was highly unlikely the jury had seen them either. *Id.* at 638. The sixth exhibit was out on the table when it was retrieved, indicating the jury had viewed it. *Id.* However, the Court concluded that the information in this exhibit was duplicative of another document already entered into evidence and was therefore "immaterial." *Id.* at 640-41. After completing a thorough review of the extrinsic evidence, the Court gave defense counsel an opportunity to be heard, and defense counsel had "no request for any action." *Id.* at 641. The Court took no

further action and allowed the jury to continue deliberating the next day. *Id.* at 641-42.

The trial ended on January 29, 2010 when the jury returned a guilty verdict on all counts. *Id.* at 646. On June 10, 2010, the Court sentenced Nkansah to 75 months imprisonment. Resp. Mem. at 8; Cr. Dkt. No. 79. It also imposed three years of supervised release, an order of forfeiture, $500 in special assessments, and $536,167.00 in restitution. *Id.*

## D.   Post-Trial Motions

On February 2, 2010, although represented by counsel, Nkansah filed a *pro se* Motion for Judgment of Acquittal or New Trial. Cr. Dkt. No. 64. In his motion, Nkansah made two arguments. First, he claimed that the jury's verdict was not supported by sufficient evidence because the Government knowingly introduced perjured testimony from two witnesses. Cr. Dkt. No. 70 at 1-2 (citing Cr. Dkt. No. 64). Second, Nkansah argued the extrinsic material left in the jury room violated his constitutional rights. *Id.* As to his first argument, the Court found that Nkansah's conclusory assertions of prosecutorial misconduct were insufficient to meet his "heavy burden" that there was insufficient evidence to support the conviction. *Id* at 2. Considering his second argument, the Court reaffirmed its original finding at trial that the extrinsic evidence was immaterial and, therefore, not prejudicial. *Id.* Accordingly, the Court denied the motion and upheld his conviction. *Id.*

On April 14, 2010, still represented by counsel, Nkansah filed a second *pro se*
motion titled "Motion for Ineffective Assistance of Counsel" alleging his trial
counsel's performance had been deficient. Cr. Dkt. No. 71. The Court did not
analyze the merits, but denied the motion because it was premature. Cr. Dkt. No.
73. However, the Court did observe that if it were able to consider the merits, it
"would find them frivolous on their face." *Id.* at 2.[4]

## E.    Direct Appeal

On June 17, 2010, Nkansah filed a notice of appeal with the United States
Court of Appeals for the Second Circuit. Cr. Dkt. No. 81. On January 13, 2011, he
filed his appellate brief seeking review as to whether: (1) there was sufficient
evidence to support the conviction on Count three; (2) the extrinsic material left in
the jury room required vacating the conviction and remanding the case for a new
trial; (3) the Government's omission of the "interstate commerce" element from the
indictment required a reversal and dismissal of Count five; and (4) his sentence was
unreasonable due to the disparity in sentencing between Nkansah and his co-
defendants and the Government's use of an "intended loss" measure to calculate his
sentence. *See United States of America v. Nkansah*, No. 10-2441 (2d Cir. 2010)
(Dkt. No. 22) Nkansah's Appellant Brief ("App. Brief") at 2. On November 8, 2012,

---

[4] Specifically, the Court stated: "If the Court were to reach the merits of the various
allegations set forth in Mr. Nkansah's current motion, it would find them frivolous
on their face, since the Court, having presided over both the pretrial proceedings
and the trial in this matter, is fully aware of the excellent representation given to
Mr. Nkansah by [counsel]. Moreover, it is noteworthy that Mr. Nkansah, who well
knows how to make a motion for appointment of new counsel, has never made such
a motion to replace [counsel]." Cr. Dkt. No. 73 at 2.

the Court of Appeals vacated Nkansah's conviction on Counts three and four,
upheld his conviction on the other counts, and remanded the case for resentencing.
*Nkansah*, 699 F.3d at 751, 753.

On January 3, 2013, on remand, the Court resentenced Nkansah to a period
of time served, affirmed his three-year period of supervised release, vacated the
order of forfeiture, reduced the special assessment from $500 to $300, and affirmed
the $536,167.00 restitution order.  Cr. Dkt. No. 94.

## F.   Appeal of Resentencing

On January 3, 2013, Nkansah, proceeding *pro se*, filed a second notice of
appeal to challenge the sentence imposed on remand.  *See United States of America
v. Nkansah*, No. 13-521 (2d Cir. 2013); *see also* Cr. Dkt. No. 97.  On August 19,
2013, Nkansah's appellate counsel filed a motion pursuant to *Anders v. California*,
386 U.S. 738 (1967), stating that no non-frivolous claims could be raised on a second
appeal and, accordingly, moved to withdraw.  Cr. Dkt. No. 106.  On November 18,
2013, the Government filed a Motion for Summary Affirmance.  *Id.*  On December 9,
2013, Nkansah opposed the Government's motion, alleging prosecutorial
misconduct and insufficient evidence.  *See United States of America v. Nkansah*, No.
13-521 (2d Cir. 2013) (Dkt. No. 63).  On March 17, 2014, the Court of Appeals
summarily affirmed Nkansah's conviction and sentence.  Cr. Dkt. No. 106.

## G.     The Instant Petition

Nkansah filed the instant petition on June 18, 2015 in which he raises 12

grounds for relief.[5]  Memorandum of Law in Support of Motion to Vacate, Set Aside

or Correct a Sentence Pursuant to 28 U.S.C. § 2255 ("Pet. Mem.") (Dkt. No. 1).  In

his petition, Nkansah challenges his conviction on the following grounds (which the

Court has organized, liberally construing them as 12 separate claims):

1. There was insufficient evidence to support all five counts of his conviction.
   *Id.* at 8-9.

---

[5] As a threshold matter, the Court notes that Nkansah's petition appears to be time-barred.  Section 2255 habeas petitions must be filed within one year after the date on which the judgment of conviction becomes final.  *See* 28 U.S.C. § 2255(f)(1).  "A conviction becomes final . . . 'when the time expires for filing a petition for *certiorari* contesting the appellate court's affirmation of the conviction.'"  *Perez v. United States*, No. 08-CR-798 (DLC), 2013 WL 4572284, at *1 (S.D.N.Y. May 15, 2013) (quoting *Clay v. United States*, 537 U.S. 522 (2003)).  "The ninety-day period for filing the petition [for *certiorari*] runs 'from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate.'"  *Id.* (quoting S. Ct. R. 13(3)).  Here, the Second Circuit affirmed his resentencing on March 17, 2014.  Therefore, Nkansah had until June 16, 2014 to file a petition for a *writ of certiorari*, which he did not do.  Given the one-year statute of limitations, Nkansah had until June 16, 2015 to file his habeas petition.  His petition was docketed on June 25, 2015; however, due to the prison mailbox rule, the Court will assume the petition to be filed on the date Nkansah signed it, which was June 18, 2015.  *See Florio v. Cuomo*, No. 10-CV-0998 (SHS) (JLC), 2010 WL 5222123, at *2 n.1 (S.D.N.Y. Nov. 16, 2010) ("[B]ecause [petitioner] is representing himself, he benefits from the 'prison mailbox rule,' which provides that a petition is deemed filed on the day it is handed to the prison officials for mailing."), *adopted by*, 2011 WL 223217 (S.D.N.Y. Jan. 24, 2011).  Thus, it was filed two days late.  However, the Government did not raise this affirmative defense and the Court "is permitted, but not obliged, to consider, *sua sponte*, the timeliness of a . . . habeas petition."  *Miller v. Rabsatt*, No. 10-CV-3687 (LAP) (MHD), 2014 WL 7336456, at *8 (S.D.N.Y. Dec. 24, 2014).  Though it would constitute an independent basis to reject Nkansah's petition, the Court does not rely on this ground in recommending that the petition be denied (as Nkansah was never given an opportunity to address this issue).  Instead, the Court reaches the merits of his petition and recommends its denial on those grounds.

2. The restitution order was improper because Counts three and four of his conviction were vacated on appeal. *Id.* at 6.
3. The Government withheld exculpatory evidence during trial. *Id.* at 7.
4. The Government did not meet its burden to establish a conspiratorial relationship between the co-defendants. *Id.*
5. The Government knowingly introduced false testimony from co-defendant, David Dosoo, and Agent Silva. *Id.* at 7-8.
6. The Government engaged in misconduct when it added the "interstate commerce" element to Count five at trial, although it was absent from the indictment. *Id.* at 8.
7. The Government "knowingly and intentionally" placed extrinsic evidence in the jury room. *Id.*
8. The Government engaged in misconduct by persuading Nkansah's counsel not to object to the missing "interstate commerce" element in Count five. *Id.*
9. The Government engaged in misconduct by persuading Nkansah's counsel not to object to the extrinsic evidence left in the jury room. *Id.*
10. Nkansah's counsel was ineffective for failing to file a motion to dismiss on the grounds that Count four and Count five were multiplicitous. *Id.* at 3.
11. Nkansah's counsel was ineffective for failing to object to the inclusion of the "interstate commerce" element at trial after it was omitted from the indictment. *Id.* at 4.
12. Nkansah's counsel was ineffective for failing to object to the extrinsic evidence left in the jury room. *Id.* at 4-6.

Accordingly, Nkansah requests that the Court vacate his conviction, or in the alternative, grant him a new trial. *Id.* at 9. The case was assigned to me for a report and recommendation on July 2, 2015. Dkt No. 3.

On July 8, 2015, Nkansah filed a "Motion for Stay Pending Motion Under 28 U.S.C. § 2255" in which he requested the Court stay his judgment of conviction and order of restitution until his Section 2255 petition is adjudicated. Dkt. Nos. 5, 9. The Court ordered the Government to respond to the following questions raised in his motion: (1) "whether the Court has the authority to stay a judgment of conviction pending the adjudication of a habeas petition," and (2) "whether the

Court has jurisdiction over Nkansah's apparent application for a bond hearing during the pendency of his removal proceedings." Dkt. No. 10. Following the Government's response on August 4, 2015 (Dkt. No. 11), the Court denied Nkansah's motion, finding no jurisdictional basis to stay his judgment of conviction, nor jurisdiction in this habeas proceeding over any request for a bond hearing during his removal proceedings.[6] Dkt. No. 12.

On August 23, 2015, Nkansah submitted a letter to the Court requesting that in the event his petition was improper pursuant to 28 U.S.C. § 2255 due to the fact he is no longer in custody for the charges arising out of his criminal conviction, that it be construed as a *coram nobis* petition. Dkt. No. 13. As a result, the Court questioned whether he was still in custody for purposes of filing a Section 2255 petition and on September 3, 2015, the Court directed the Government to brief the following issues: (1) whether Nkansah's application to the Court can be construed as a *coram nobis* petition; and (2) whether the Court has jurisdiction over Nkansah's Section 2255 petition when he is not in custody for his underlying conviction. Dkt. No. 14. In its response, the Government contended that the Court's jurisdiction over Nkansah's Section 2255 petition is proper because Nkansah is still under supervised release stemming from his conviction. Dkt. No. 15, Cr. Dkt. No. 94. A person under supervised release is still considered "in custody" and may seek relief through a *writ of habeas corpus* pursuant to 28 U.S.C. § 2255. *See, e.g., Scanio v.*

---

[6] Nkansah is currently in removal proceedings and is incarcerated in an Alabama detention center.

*United States*, 37 F.3d 858, 860 (2d Cir. 1994). Accordingly, because Nkansah is still "in custody," the Court's jurisdiction over his Section 2255 petition is proper.

The Government submitted its opposition to Nkansah's petition on August 28, 2015 ("Resp. Mem.").[7]  Cr. Dkt. No. 112.  The Government argues that all of Nkansah's claims, with the exception of the claims alleging ineffective assistance of counsel, are procedurally barred either because Nkansah did not raise them on direct appeal or they were decided on the merits on direct appeal (Claims 1-9). Resp. Mem. at 14-16.  Furthermore, the Government contends that his ineffective assistance of counsel claims are meritless (Claim 10-12).  Resp. Mem. at 18-19. Accordingly, the Government argues that the Court should deny Nkansah's petition in its entirety without holding an evidentiary hearing.  Resp. Mem. at 1, 19.  In a letter to the Court dated August 23, 2015, Nkansah stated that he would not reply to any opposition the Government filed.  Dkt. No. 13.

## H.    Evidentiary Hearing

This Court has discretion to decide whether an evidentiary hearing is needed. *Pham v. United States,* 317 F.3d 178, 184 (2d Cir. 2003) (citing *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001)).  When there are no material facts in

---

[7] Nkansah filed a "Motion to Enforce" on November 17, 2015.  Dkt. No. 19. Nkansah sought an entry of default based on the Government's purported failure to oppose his petition.  However, the Government did oppose the petition.  Accordingly, his motion for an entry of default judgment should be denied.  Also in his Motion to Enforce, Nkansah alleges he has been treated improperly by Immigration and Customs Enforcement agents and has been denied reasonable accommodations at the detention center where he is incarcerated.  Though Nkansah may have other remedies regarding these claims, they are not properly before the Court in this petition.

14

dispute or a petitioner makes vague or conclusory allegations, the Court may base its decision on the parties' written submissions. *See Gonzalez v. United States*, 722 F.3d 118, 130-31 (2d Cir. 2013); *Raysor v. United States,* 647 F.3d 491, 494 (2d Cir. 2011). In his petition, Nkansah raises 12 claims for relief, nine of which are procedurally barred. The remaining three ineffective assistance of counsel claims do not raise disputed facts that warrant an evidentiary hearing. Therefore, the Court concludes an evidentiary hearing would not supplement the written submissions or provide any new information that would aid in rendering a decision.

## I.    Motion for Appointment of Counsel

After submitting the instant petition, Nkansah filed a Motion for the Appointment of Counsel. Dkt. No. 18. However, there is no right to counsel in civil cases collaterally challenging a conviction or sentence. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *accord Glynn v. United States*, No. 12-CV-4571 (JSR) (HBP), 2015 WL 5567036, at *13 (S.D.N.Y. Aug. 20, 2015), *adopted by*, 2015 WL 5666081 (S.D.N.Y. Sept. 22, 2015). Instead, the governing rules only require the appointment of counsel when an evidentiary hearing is needed, which the Court has concluded is unnecessary here. Rule 8(c) of the Rules Governing Section 2254 and 2255 Cases in the United States District Courts. In all other circumstances, the appointment of counsel is discretionary. *See* 18 U.S.C. § 3006A(a)(2)(B) ("Whenever . . . the interests of justice so require, representation may be provided for any financially eligible person who—is seeking relief under section . . . 2255 of title 28."). Accordingly, a court should analyze whether to appoint counsel in the same manner

as it would any other civil case. *See, e.g., Mack v. Lavalley*, No. 13-CV-8194 (GHW) (HBP), 2015 WL 463818, at *1 (S.D.N.Y. Feb. 4, 2015); *United States v. Ozsusamlar*, No. 05-CV-1077 (PKL), 2010 WL 3835083, at *1 (S.D.N.Y. Sept. 15, 2010) (citations omitted).

For the Court to order the appointment of counsel, it must evaluate several factors, the most important of which is likelihood of success on the merits. *See Parks v. Smith*, 505 F. App'x 42, 43 (2d Cir. 2012) (citing *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989)); *see also Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010). If Nkansah satisfies this threshold requirement, the Court can then consider other factors to determine whether counsel should be appointed. However, as the Court details below, Nkansah's claims are meritless. Therefore, he is unable to satisfy this threshold requirement necessary for the Court to further consider whether appointment of counsel is warranted. *See Glynn*, 2015 WL 5567036 at *14. Accordingly, Nkansah's motion for the appointment of counsel should be denied.

## II.   DISCUSSION

### A.   Standard of Review

#### 1.   Law Governing Section 2255 Motions

Section 2255 provides a prisoner in federal custody with a limited opportunity to collaterally challenge the legality of his sentence. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979). To obtain relief under 28 U.S.C. § 2255, the prisoner must show that his sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized

16

by law; or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).

Collateral relief is available only for a constitutional error "'that constitutes a

fundamental defect which inherently results in a complete miscarriage of justice.'"

*FNU LNU v. United States*, No. 12-CV-7897 (RJS), 2015 WL 5893723, at *4

(S.D.N.Y. Oct. 7, 2015) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.

1995)); *accord Medrano v. United States*, No. 13-CV-1604 (LTS) (JLC), 2015 WL

848551, at *12 (S.D.N.Y. Feb. 27, 2015).  As the Second Circuit has explained, "[t]he

reasons for narrowly limiting the relief permitted under § 2255—a respect for the

finality of criminal sentences, the efficient allocation of judicial resources, and an

aversion to retrying issues years after the underlying events took place—are 'well

known and basic to our adversary system of justice.'"  *Bokun*, 73 F.3d at 12 (quoting

*Addonizio*, 442 U.S. at 184 & n.11).

Further limitations have been established on a federal prisoner's right to

collaterally challenge his sentence.  First, it is well-established that a Section 2255

petition "cannot be used to 'relitigate questions which were raised and considered

on direct appeal.'"  *Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009)

(quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)); *accord Yick Man

Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) ("[T]he so-called mandate rule

bars re-litigation of issues already decided on direct appeal.").  Moreover, this

limitation extends to issues expressly or impliedly decided on appeal.  *United States

v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).  However, a court may "reconsider an

earlier decision when [it is] confronted with 'an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)); *accord Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.").

Second, "[a] habeas action is not intended to substitute for a direct appeal." *Fountain v. United States*, 357 F.3d 250, 254 (2d Cir. 2004) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)); *accord Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Zhang v. United States*, 506 F3d 162, 166 (2d Cir. 2007)). Accordingly, "[w]here a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent Section 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." *Rosa v. United States*, 170 F. Supp. 2d 388, 396 (S.D.N.Y. 2001) (collecting cases); *accord Zhang*, 506 F.3d at 166 (requiring cause for the failure to appeal resulting in actual prejudice or proof of actual innocence) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

"To satisfy the 'cause' requirement, the petitioner must show circumstances 'external to the petitioner, something that cannot be fairly attributed to him.'" *Zhang*, 506 F.3d at 166 (quoting *Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500, 508 (S.D.N.Y. 2005)). To prove "actual prejudice," the petitioner must show

that the alleged errors "resulted in 'substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions.'" *Gutierrez v. United States*, 702 F.3d 103, 112 (2d Cir. 2012) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)).

## 2.    Standard for Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, the petitioner must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). These claims are analyzed using the two-prong test set forth in *Strickland*, which places the burden on the petitioner to "(1) demonstrate his counsel's performance fell below an objective standard of reasonableness in light of 'prevailing professional norms' and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (citation omitted); *see Santone v. Fischer*, 689 F.3d 138, 154 (2d Cir. 2012).

Under the first *Strickland* prong, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689; *accord Raysor,* 647 F.3d at 495; *Harrington*, 689 F.3d at 129. In evaluating counsel's effectiveness, a court must assess the case from the viewpoint of the attorney at the time of the challenged conduct or omission. *See Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993); *accord Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008). In light of this standard, "the record must demonstrate that 'counsel made errors so serious

19

that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

If the petitioner satisfies the first prong, he then must establish he was prejudiced as a result of his counsel's ineffectiveness. *Strickland*, 466 U.S. at 692. To establish prejudice, a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). However, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

An ineffective assistance of counsel claim may be raised for the first time in a Section 2255 motion "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504, 509 (2003); *accord Yick Man Mui*, 614 F.3d at 54; *Harrington*, 689 F.3d at 129. In fact, "in most cases" a Section 2255 motion is "preferable to direct appeal for deciding claims of ineffective assistance." *United States v. Kimber*, 777 F.3d 553, 562 (2d Cir. 2015) (quoting *Massaro,* 538 U.S. at 504). However, such claims may also be procedurally barred if they were raised and considered on direct appeal. *Yick Man Mui,* 614 F.3d at 53-54; *accord United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009). Additionally,

these claims may be barred if "the factual predicates of those claims, while not

explicitly raised on direct appeal, were nonetheless impliedly rejected by the

appellate court mandate." *Yick Man Mui,* 614 F.3d at 53; *see also Pitcher,* 559 F.3d

at 124.

## B.   Nine of Nkansah's Claims Are Procedurally Barred

### 1.   Nkansah's Claims Not Raised on Direct Appeal Are Procedurally Barred (Claims 1-5 and 7-9)

In his direct appeal, Nkansah raised the following four grounds for relief: (1)

there was insufficient evidence to convict on Count three; (2) the extrinsic evidence

left in the jury room was highly prejudicial; (3) the indictment was defective; and (4)

his sentence was unreasonable. App. Brief at 15, 23, 28, 31.[8] Nkansah presents

---

[8] As noted, Nkansah also appealed his resentencing to the Second Circuit. However, the only issues that could properly be raised in that appeal were those related to his resentencing, not issues relating to the underlying criminal case. *See United States v. Quintieri,* 306 F.3d 1217, 1229 (2d Cir. 2002) ("[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, it is considered waived and the law of the case doctrine bars . . . an appellate court in a subsequent appeal from reopening such issues . . . For similar reasons, we conclude that the law of the case ordinarily prohibits a party, upon resentencing or an appeal from that resentencing, from raising issues that he or she waived by not litigating them at the time of the initial sentencing."). Putting aside the three ineffective assistance of counsel claims (which the Court will address on the merits), of the other nine habeas claims, all but one relate to the underlying criminal case. Therefore, these eight claims could not have been properly raised on his subsequent appeal. Accordingly, when the Court concludes that a claim is procedurally barred for Nkansah having failed to raise it on his initial direct appeal, the existence of his subsequent appeal does not change the analysis. The only habeas claim affected by the subsequent appeal is the objection to the restitution order. However, as the Court discusses below, Nkansah did not object to the restitution order in his subsequent appeal. Therefore, the resentencing appeal cannot save any claim that the Court deems procedurally barred as a result of Nkansah having failed to raise it on direct appeal because either Nkansah could not have raised that claim in his subsequent appeal, or he failed to do so.

eight claims in the instant petition not raised on appeal (Claims 1-5, and 7-9).

Accordingly, the Government argues that he is procedurally barred from raising

these claims in the instant petition. Resp. Mem. at 14-16. Nkansah does not assert

any cause for failing to raise these claims on appeal or any prejudice he experienced

as a result. *See Zhang*, 506 F.3d at 166. Moreover, he provides no basis for the

Court to excuse this procedural failing or any legal authority to support his position

that the Court should review the merits of these claims. Accordingly as is discussed

below, the Court recommends that claims 1-5 and 7-9 be denied as procedurally

barred. Five of these claims relate to prosecutorial misconduct and will be

addressed first (Claims 3, 5, and 7-9). The remaining three raise separate issues,

which the Court will address in turn (Claims 1, 2, and 4).

### a. Nkansah's Prosecutorial Misconduct Claims are Procedurally Barred (Claims 3, 5, and 7-9)

Nkansah did not raise any of his prosecutorial misconduct claims on direct

appeal (Claims 3, 5, and 7-9). First, on direct appeal, Nkansah did not claim the

prosecution withheld exculpatory evidence at trial pertaining to the William Arthur

bank account (Claim 3). Pet. Mem. at 7. Nonetheless, even if Nkansah did

articulate some cause for failing to raise this claim on appeal, he cannot establish

any prejudicial effect because the evidence related to the William Arthur account

was relevant only to Count three, the conviction of which was vacated. *Nkansah*,

699 F.3d at 751. Second, Nkansah did not claim on direct appeal that the

Government knowingly introduced false testimony from David Dosoo and Agent

Silva (Claim 5). Pet. Mem. at 7-8. Third, Nkansah did not claim the Government

"knowingly and intentionally" placed extrinsic evidence in the jury room (Claim 7).
Pet. Mem. at 8.  On direct appeal, he argued that the convictions on Counts one,
two, and five should be vacated because the extrinsic evidence left in the jury room
was "highly prejudicial" and would lead an average juror to find him guilty.  *See*
App. Brief at 13-14.  However, Nkansah did not allege that the Government
engaged in misconduct.  Lastly, Nkansah did not argue the Government improperly
influenced his counsel's decision not to object to the missing "interstate commerce"
element in Count five of the indictment or the extrinsic evidence left in the jury
room (Claims 8-9).  Accordingly, because none of these claims was raised on direct
appeal, he is barred from bringing them now.

### b. Nkansah's Remaining Claims Not Raised on Direct Appeal Are Procedurally Barred (Claims 1, 2, and 4)

Claims 1, 2, and 4 were also not raised on direct appeal.  As to Claim 1
(insufficiency of evidence), on direct appeal, Nkansah only challenged his conviction
on Count three on insufficient evidence grounds.  He prevailed and the Court of
Appeals vacated that conviction.  *Nkansah*, 699 F.3d at 751.  The Court of Appeals
also vacated Nkansah's conviction on Count four, as it was predicated on a
conviction on Count three.  *Id.*  However, he did not argue there was insufficient
evidence for Counts one, two, or five (Claim 1).  *Id.* at 747.  Therefore, these claims
are not properly presented in the instant petition.

Similarly, on direct appeal of his resentencing, Nkansah failed to raise Claim
2 (regarding the restitution order).  *See United States of America v. Nkansah*, No.
13-521 (2d Cir. 2013) Dkt. Nos. 54, 63.  Therefore, Nkansah is procedurally barred

from raising Claim 2 for the first time in the instant petition. Moreover, even if Nkansah did properly raise a claim challenging the restitution order, the Second Circuit summarily affirmed his resentencing on March 17, 2014, including the restitution order, thus also precluding the Court from considering this claim. Cr. Dkt. No. 106.

Lastly, on direct appeal Nkansah did not assert that the Government failed to establish a conspiratorial relationship between himself and his co-defendants in order to meet its burden of proof for Count one (Claim 4). Pet. Mem. at 7. Therefore, he is procedurally barred from raising this claim as well.

In sum, because Claims 1-5 and 7-9 were not raised on direct appeal and Nkansah neither asserts cause for this failure nor prejudice resulting therefrom, the Court recommends that Claims 1-5 and 7-9 be denied as procedurally barred.

### 2.   Nkansah's Claim Raised on Appeal, but Rejected is Procedurally Barred (Claim 6)

On direct appeal, Nkansah claimed that his conviction on Count five should be reversed because the Government omitted the "interstate commerce" element from the indictment (Claim 6). *Nkansah*, 699 F.3d at 752. The Government contends this claim is procedurally barred because it was decided on the merits on appeal. Resp. Mem. at 17. Moreover, the Government argues that, in any event, the defect to the indictment was cured prior to trial by including the "interstate commerce" element in the Government's Request to Charge. *Id* at 18.

The Court of Appeals rejected this claim on direct appeal because the omission did not affect Nkansah's "substantial rights" and the evidence presented in

24

support of the omitted element was "overwhelming." *Nkansah*, 699 F.3d at 752.
Nkansah provides no basis to overcome the procedural bar. He has not directed the
Court's attention to "an intervening change of controlling law, the availability of
new evidence, or the need to correct a clear error or prevent manifest injustice."
*Becker*, 502 F.3d at 127. Accordingly, the Court will not address the merits of Claim
6 and recommends it also be denied as procedurally barred.

## C.    Nkansah's Ineffective Assistance of Counsel Claims Lack Merit

Nkansah raises three ineffective assistance of counsel claims that were not
raised on direct appeal (Claims 10-12). Pet. Mem. at 2-6. However, such claims are
not procedurally barred when the petitioner fails to raise them on direct appeal.
*Massaro*, 538 U.S. at 504, 509. The Government does not argue that Nkansah's
claims are procedurally barred, but asserts that his claims should be denied for
failure to satisfy the *Strickland* standard. Resp. Mem. at 16-19.

Nkansah contends that his counsel was ineffective for failing to: (1) file a
motion to dismiss on the grounds that Count four and Count five were
multiplicitous (Claim 10), Pet. Mem. at 3; (2) object to the inclusion of the
"interstate commerce" element at trial after it was omitted from the indictment
(Claim 11), *id.* at 4; and (3) object to the extrinsic evidence left in the jury room
(Claim 12), *id.* As explained below, the Court concludes Nkansah's claims are all
meritless, and therefore recommends they be denied.

### 1. Failure to File a Motion to Dismiss on the Ground that Count Four and Count Five were Multiplicitous (Claim 10)

Nkansah alleges that he was charged with the same crime twice in Counts four and five, and as a result, his indictment was multiplicitous in violation of the Double Jeopardy Clause. *Id.* at 3. "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Kerley*, 544 F.3d 172, 178 (2d Cir. 2008) (quoting *United States v. Chacko,* 169 F.3d 140, 145 (2d Cir.1999)). Accordingly, Nkansah argues that his counsel should have filed a pre-trial motion to dismiss the defective indictment, and his failure to do so meets the *Strickland* standard for ineffective assistance of counsel. Pet. Mem. at 3. Nkansah asserts that if his counsel had filed such a motion, his charges would have been reduced by one count. Pet. Mem. at 3.

However, the Second Circuit has held that the Double Jeopardy Clause does not protect against multiplicitous counts "so long as no more than one punishment is eventually imposed." *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006); *see United States v. Ahmed*, 94 F. Supp. 3d 394, 433 (E.D.N.Y. 2015) ("The appropriate remedy, where a defendant is prosecuted and convicted on multiplicitous counts, is to 'vacate the conviction on all but one.'") (quoting *Josephberg*, 459 F.3d at 355); *United States v. Medina*, No. 13-CR-272 (PGG), 2014 WL 3057917, at *3 (S.D.N.Y. July 7, 2014) ("[W]here '[n]o convictions have been entered . . . the Double Jeopardy Clause's guarantee against multiple punishments

for the same offense has not yet been triggered.'") (quoting *United States v. Polouizzi*, 564 F.3d 142, 157 (2d Cir. 2009)).

Here, Nkansah's rights were not violated to the extent that the Government brought multiplicitous counts. It is unlikely that any pre-trial motion to dismiss the indictment would have been granted given the method to remedy multiplicitous counts is to vacate any convictions that violate the Double Jeopardy Clause. *See Ahmed*, 94 F. Supp. 3d at 433. Accordingly, any motion seeking to remedy multiplicitous counts before trial would have been premature. *See Slaughter v. United States*, No. 08-CV-404 (JFK), 2008 WL 4449476, at \*5-6 (S.D.N.Y. Oct. 1, 2008) (citations omitted) (rejecting ineffective assistance claim because no prejudice resulted from failing to object to a multiplicitous indictment as defendant was ultimately not punished multiple times for a single offense). Therefore, his counsel's choice to forego such action did not fall below the *Strickland* standard.

Counsel's failure to move to dismiss the indictment did not prejudice Nkansah for other reasons as well. First, at the charging conference, the Court recognized that Counts four and five were multiplicitous. The Court stated, "It [Count five] seems to me totally duplicative [of Count four] with respect to Count Three." Tr. at 488-89. Accordingly, in its charge to the jury, the Court did not allow Count three to serve as a predicate to Count five. Instead, in order to convict on Count five, the jury needed to find Nkansah guilty of either Counts one or two. Count three was only a predicate offense for Count four. Tr. at 616-17. Accordingly, to the extent that the indictment was defective for Counts four and five

27

being multiplicitous, it was cured before the jury deliberated and therefore, it was

not possible for Nkansah to be punished for the same crime twice. *See Slaughter,*

2008 WL 4449476, at *6 (finding no prejudice when the defendant "was not subject

to the risk of multiple punishments for a single offense"). Additionally, even if

Nkansah is correct that a successful challenge to the indictment would have

reduced the charges by one count, the Court of Appeals vacated his conviction on

Count four, which effectively achieved the same result. *Johnson v. United States,*

779 F.3d 125, 130 (2d Cir. 2015) (denying defendant's ineffective assistance of

counsel claim, in part, because any potential prejudice was cured when his

conviction was vacated on one of the multiplicitous counts). Therefore, the Court

concludes that Nkansah suffered no prejudice as a result of his counsel's decision

not to file a pre-trial motion to dismiss the indictment.

### 2. Failure to Object to the Inclusion of the "Interstate Commerce" Element at Trial After it was Omitted from the Indictment (Claim 11)

Nkansah contends his indictment was defective because the "interstate

commerce" element in Count five was omitted by the Government and therefore, the

grand jury did not properly indict him on Count five.[9] Pet. Mem. at 4. The

Government argues it "cured" the defective indictment by including the "interstate

commerce" element in the jury charge. Resp. Mem. at 17. Nkansah's counsel

---

[9] Count five of the indictment charged Nkansah "with possessing, without lawful authority, means of identification of other persons with the intent to commit, and to aid and abet, unlawful activity." 18 U.S.C. § 1028(a)(7).

neither objected to the Government's proposed jury charge, nor challenged the indictment.  Pet. Mem. at 4; Tr. 489.

However, as the Second Circuit concluded, there was "overwhelming" evidence to support the "interstate commerce" element. *Nkansah*, 699 F.3d at 752. "When there is overwhelming evidence in support of the missing indictment element, the grand jury surely would have found the missing element, and the right to be tried on only charges returned by the grand jury is not violated." *Id.*  A similar issue arose in *United States v. Cottonwood*, 535 U.S. 625, 633 (2002), where drug quantity was omitted from the indictment.  There too the evidence was overwhelming and the court held that "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." *Id.*  Here the evidence was plainly strong enough to support the interstate commerce element, including IP addresses registered to Nkansah that were used to prepare fraudulent tax returns. *Nkansah*, 699 F.3d at 752.

Furthermore, as a general principle, an error that occurs during the indictment process is rendered harmless when a jury returns a guilty verdict. *See, e.g., United States v. Mechanik*, 475 U.S. 66, 70 (1986) (explaining the "jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt"); *see also Geronimo v. Rushing*, No. 11-CV-1121 (CBA), 2014 WL 4678253, at *12 (E.D.N.Y. Sept. 19, 2014); *Cordero v. United*

*States*, No. 01-CV-74 (SAS), 2010 WL 4507771, at \*4 (S.D.N.Y. Nov. 8, 2010).
Because the jury found beyond a reasonable doubt that Nkansah engaged in
interstate commerce when convicting him of identity theft, any errors in the
indictment were rendered moot by the verdict.

Therefore, as the Second Circuit concluded on direct appeal, there was no
violation of Nkansah's constitutional rights. Accordingly, not only is there no
prejudice resulting from counsel's failure to object to the indictment, but the Court
cannot conclude that counsel was ineffective for failing to make a non-meritorious
objection.

### 3. Failure to Object to Extrinsic Evidence Left in the Jury Room (Claim 12)

Finally, Nkansah alleges his trial counsel was ineffective by failing to object
to or request an evidentiary hearing after extrinsic evidence was left in the jury
room. Pet. Mem. at 4. On direct appeal, Nkansah's appellate counsel challenged
his convictions on the basis that the jury was exposed to "highly incriminating
extrinsic material" and the trial court erred when it did not hold an evidentiary
hearing. *Nkansah*, 699 F.3d at 751; *see also* App. Brief at 23-28. Nkansah did not
allege his trial counsel was ineffective, and the Second Circuit concluded that the
trial court did not commit plain error when it determined the effect of the extrinsic
materials on the jury was harmless. *Nkansah*, 699 F.3d at 751.

After learning that material had been left in the jury room, the Court
determined that, with the exception of one document, it was highly unlikely that a
juror had viewed the extrinsic material. Tr. at 627-32, 636-41. And it concluded

30

that the one document jurors may have viewed was duplicative of another document already in evidence. *Id.* at 638-41. As a result, the Court determined that the extrinsic evidence left in the jury room was harmless. *Id.* at 641.

In light of these facts, trial counsel's failure to take action does not run afoul of *Strickland* because it is conceivable that counsel had sound reasons to take no action. As the Government suggests, Nkansah's counsel may have thought the trial was going well and did not want to take any action that would result in a mistrial or call the jury's attention to the extrinsic materials. Resp. Mem. at 18. Moreover, the Second Circuit determined that the trial court did not commit plain error in its determination. *Nkansah*, 699 F.3d at 751. Therefore, given this approval of the trial court's decision, Nkansah's counsel cannot be faulted for failing to make what likely would have been a losing objection.

Furthermore, even if Nkansah was able to show that his counsel's performance fell below the *Strickland* standard, he is unable to demonstrate how he was prejudiced. The Court had already determined that the jury did not see this extrinsic evidence. Therefore, it likely would have overruled any objection and the trial would have proceeded, which is exactly what occurred. Additionally, trial counsel's failure to object did not foreclose Nkansah from raising this issue on appeal, which he did and lost. Accordingly, Nkansah cannot establish that had his counsel acted differently, the outcome would have been different.

In sum, the Court recommends that Claims 10 through 12 be denied.

## III.   CONCLUSION

For the foregoing reasons, I recommend that the Court deny Nkansah's petition, his motion for appointment of counsel, and his motion to enforce.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: December 14, 2015
      New York, New York

JAMES L. COTT
United States Magistrate Judge

32

**A copy of this Report and Recommendation has been mailed to:**

Felix Nkansah
#289105
Etowah County Detention Center
827 Forrest Avenue
Gadsden, AL 35901